**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

OBERWEIS DAIRY, INC.,

                Plaintiff,

    v.                              Case No. 08 C 4345

DEMOCRATIC CONGRESSIONAL
CAMPAIGN COMMITTEE, INC.,

                Defendant.

## DEFENDANT DEMOCRATIC CONGRESSIONAL CAMPAIGN COMMITTEE, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF OBERWEIS DAIRY, INC.'S MOTION TO REMAND

       Defendant, Democratic Congressional Campaign Committee, Inc. ("The DCCC"), by and through its attorneys, Perkins Coie LLP, responds in opposition to Plaintiff Oberweis Dairy, Inc.'s ("Oberweis Dairy" or "The Dairy") Motion to Remand ("Motion"), and in support thereof, states as follows:

### I.   INTRODUCTION

       Oberweis Dairy has filed a one-count complaint (the "Complaint") against The DCCC for false light invasion of privacy, and has requested injunctive relief and an unspecified amount of compensatory damages, punitive damages and costs. The Complaint contains only vague, bare-bones damages allegations, and does not establish that Oberweis Dairy is seeking more than $75,000 in damages. It was not until receiving Oberweis Dairy's settlement demand letter that The DCCC could reasonably ascertain that The Dairy was claiming more than $75,000 in damages, and therefore that the action is removable. Moreover, The Dairy's false light claim is fatally flawed in multiple respects, not the least of which is that a corporation does not possess a right to privacy, and therefore, Oberweis Dairy lacks standing to even bring the claim asserted in the Complaint.

In its Motion to Remand, Oberweis Dairy argues that The DCCC's Notice of Removal ("Notice") was untimely, and also appears to suggest that The DCCC somehow waived its right to remove and/or removed for an improper purpose. None of these arguments are supported by controlling Seventh Circuit case law, the Motion to Remand should therefore be denied.

## II. FACTUAL BACKGROUND

The DCCC was served with the Complaint on Friday, April 18, 2008. Affidavit of C. Vincent Maloney, attached as the Exhibit, at ¶ 3. The following week, counsel for The DCCC telephoned counsel for Oberweis Dairy and left two messages inviting counsel for The Dairy to call him regarding the matter. *Id.* at ¶¶ 5-6. On April 28, 2008, counsel for the parties had a telephone discussion wherein The DCCC's counsel inquired as to Oberweis Dairy's damages and whether the parties could resolve the matter prior to further litigation. *Id.* at ¶ 7. Throughout May and June 2008, counsel for both parties continued to discuss a possible resolution of the matter and to facilitate that, agreed to multiple continuances in the Circuit Court of Kane County for The DCCC to answer or otherwise plead to the Complaint. *Id.* at ¶¶ 8-13. Following from these discussions, counsel for Oberweis Dairy sent counsel for The DCCC a written settlement demand letter, which was received by The DCCC's counsel on or about July 7, 2008. *Id.* at ¶ 14. In this letter, for the first time, Oberweis Dairy indicated that it was seeking $100,000 in compensatory damages. *Id.* On July 31, 2008, less than 30 days after receiving Oberweis Dairy's $100,000 demand letter and still without any activity on the merits in state court, The DCCC filed its Notice of Removal. Accordingly, The DCCC's Notice was timely, and its right to removal was not waived. Oberweis Dairy's Motion must, therefore, be denied.

## III. LEGAL STANDARD

Removal is governed by 28 U.S.C. § 1446(b), which states in relevant part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant...of the initial pleading setting forth the claim for relief upon which such action or proceeding is based...If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant...of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b). The removing party bears the burden of demonstrating that federal jurisdiction exists. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). Courts must narrowly interpret removal statutes "and presume that the plaintiff may choose his or her forum." *Id.*

## IV. ARGUMENT

Oberweis Dairy argues, without citation to controlling authority, that The DCCC's Notice of Removal was not timely. As demonstrated below, in line with controlling case law, The DCCC did timely remove. Oberweis Dairy's contradictory claims that the Complaint does clearly establish that the amount in controversy requirement is met, and also that it does not, Motion at p.3 n.2, underscores the ambiguity of the damages allegations in the Complaint, thereby undercutting its argument that The DCCC should have removed upon receipt of the Complaint.

The Dairy also appears to argue, without *any* cited authority, that The DCCC waived its right to remove and/or removed for an improper purpose. This argument too is without merit, and this Court should deny Oberweis Dairy's Motion to Remand.

### A. THE DCCC'S NOTICE OF REMOVAL WAS TIMELY FILED: OBERWEIS DAIRY'S JULY 3, 2008 $100,000 SETTLEMENT DEMAND LETTER WAS THE FIRST PAPER FROM WHICH IT COULD BE REASONABLY ASCERTAINED THAT THE DAIRY WAS SEEKING DAMAGES IN EXCESS OF $75,000

Oberweis Dairy argues that the 30-day clock for removal started when The DCCC was served with the Complaint because, even though the Complaint does not expressly claim more than $75,000 in damages, a "reasonable reading" of the Complaint indicates that the amount in controversy exceeds $75,000. Motion at pp. 2-3. However, pursuant to the requirements of 28 U.S.C. § 1446(b) and controlling Seventh Circuit case law, the vague damages allegations in the Complaint did not put The DCCC on notice that the case is removable. Rather, The DCCC was not put on notice that the case was properly removable until it received The Dairy's $100,000 settlement demand letter on July 7, 2008. The DCCC then filed its Notice of Removal within 30 days of receipt of this demand, and thus its Notice was timely.

Oberweis Dairy's "heads I win, tails you lose" claim in footnote 2 of the Motion, while absurd, aptly illustrates the danger of forcing defendants to remove based on guesswork. Oberweis Dairy argues that if this Court agrees with The DCCC and finds that the amount in

3

controversy is not established on the face of the Complaint, that the matter must still be remanded because, in that case, "there is no diversity jurisdiction." Motion at p.3 n.2. Thus, The Dairy is arguing vehemently in the body of its Motion that it is obvious from the Complaint that the amount in controversy exceeds $75,000, while at the same time denying it in a footnote. Apparently, if The DCCC had immediately removed based solely on the Complaint, Oberweis Dairy would have moved to remand arguing that the vaguely pleaded Complaint does not establish that more than $75,000 is at issue here. Oberweis Dairy cannot have its cake and eat it too, and this Court should reject The Dairy's gamesmanship and deny the Motion to Remand.

> 1. **When A Complaint Contains Only Vague Damages Allegations, The General Rule Is That The 30-Day Clock For Removal Does Not Start Until The Plaintiff Expressly Claims More Than $75,000 In Damages: The DCCC Complied With This Rule And Its Notice Of Removal Was Therefore Timely Filed**

In the Northern District of Illinois, the general rule is that the 30-day clock for removal does not start until the plaintiff expressly claims more than $75,000 in damages. *See RBC Mortgage Co. v. Couch*, 274 F. Supp. 2d 965, 969 (N.D. Ill. 2003) ("where the complaint does not articulate a specific *ad damnum*, the defendant is not on notice that more than $75,000 is in controversy, and the thirty-day time-clock does not start running until he receives an admission that the plaintiff is indeed seeking more than $75,000"); *Schacht v. Ethicon, Inc.*, 881 F. Supp. 348 (N.D. Ill. 1995) (Shadur, J.) (the amount in controversy must be established expressly and explicitly, not through "surmise or guesswork"). Here, Oberweis Dairy's Complaint alleges only vague and unspecified damages, including injunctive relief, compensatory damages "in an amount exceeding $50,000," punitive damages in an undetermined amount, and costs. Complaint at pp. 2-3, Wherefore clause. Oberweis Dairy provides no details or substance concerning any component of its alleged damages, stating only that The DCCC's ads were "damaging to Plaintiff's business and business relationships, in that its reputation with its customers, clients, vendors and stockholders has been and will continue to be reduced and diminished by the communication that it hired illegal immigrants to work at Plaintiff's dairy stores." Complaint at ¶8. The Complaint fails to quantify or substantiate The Dairy's damages in any way, not identifying, for instance, any clients or business relationships it has allegedly lost. These bare bones damages allegations did not put The DCCC on notice that The Dairy was claiming more than $75,000 in damages. The DCCC would have been guessing had it removed

upon receipt of the Complaint, something Judge Shadur has expressly indicated a party should not do. Only upon receipt of Oberweis Dairy's settlement demand letter on July 7, 2008, explicitly demanding, first, equitable relief, and second, $100,000 in compensatory damages, was The DCCC put on notice of the actual amount in controversy. Here, The DCCC removed on July 31, 2008, within the 30-day window set forth in 28 U.S.C. § 1446(b). Thus, The DCCC's Notice of Removal complied with federal law and was timely.

The timeliness of The DCCC's Notice is further demonstrated by comparison to established Northern District of Illinois precedent. In *RBC Mortgage Co. v. Couch*, 274 F. Supp. 2d 965, 969 (N.D. Ill. 2003), for example, the Court applied the general rule in denying the plaintiff's motion to remand based on lack of timeliness. The plaintiff alleged in its complaint "damages in an amount to be determined at trial," and claimed damages "exceeding $50,000" in each of three counts, and injunctive relief in a fourth count. 274 F. Supp. 2d 965, 967. Defendant filed its notice of removal within 30 days of receiving an admission from plaintiff that it sought more than $75,000 in damages, but almost nine months after being served with the complaint. *Id.* at 968. Plaintiff argued that the notice of removal was untimely because, by aggregating the $50,000 + claimed for three of the four counts, the complaint contained enough information for the defendant to determine that the amount in controversy exceeded $75,000. *Id.* at 968-69. The Court disagreed, however, and applied the general rule that the 30-day clock does not start until the plaintiff explicitly claims more than $75,000 in damages, finding the defendant's notice of removal timely-filed. *Id.* at 969. The Court also distinguished that case from other Northern District of Illinois cases that recognize an exception to the general rule only for cases involving severe personal injury, *id.*, which exception is fully addressed herein in Part A. 2.

Similarly, in *Schacht v. Ethicon, Inc.*, 881 F. Supp. 348 (N.D. Ill. 1995) (Shadur, J.), the Court *sua sponte* remanded plaintiff's personal injury action back to state court, finding that plaintiff's claim for damages "in excess of $30,000," in addition to costs, failed to establish that the amount in controversy exceeded $50,000, the jurisdictional minimum at that time. 881 F. Supp. at 350. Judge Shadur cautioned that "the existence of federal jurisdiction is something that must be established expressly, not simply in terms or surmise or guesswork," particularly because the plaintiff is the "master" of his complaint, and is able to sue for less than he would be entitled to if he desires to keep the action in state court. *Id.* at 348. Likewise, in *Roscor Corp. v.*

5

*Itelco USA, Inc.*, 237 F. Supp. 2d 883 (N.D. Ill. 2002) (Shadur, J.), the plaintiff brought claims for breach of contract and fraud in the inducement in the Circuit Court of Cook County, praying for compensatory damages "in excess of $50,000" and punitive damages in an unspecified amount. 237 F. Supp. 2d at 883-84. Defendant removed and Judge Shadur, *sua sponte*, remanded the case to the Circuit Court of Cook County due to defendant's failure to establish that more than $75,000 was at issue, holding:

> the attainment of the magic over-$75,000 figure by adding Count II [sic] request for punitive damages to the same count's compensatory ad damnum is uncertain: It has been true at least since *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S. Ct. 410, 57 L.Ed.716 (1913) that each plaintiff is the master of its complaint, able to limit the amount of its claim if it wishes to preserve its chosen venue in a state court rather than a federal court.

*Id.* at 884. *See also Conway v. Medical Staffing Network Inc.*, No. 04 C 1128, 2004 WL 784886, at *5-6 (N.D. Ill. Apr. 12, 2004) (motion to remand granted where $60,000 compensatory damages and unspecified punitive damages were claimed; court held there was no evidence before it indicating that plaintiff was entitled to $60,000 in compensatory damages, and thus "any potential damage figure at this stage is mere speculation….[w]here a generalized amount of lost wages for an undisclosed time is pleaded, and other damages are vague, the potential for punitive damages to carry the total damages beyond $75,000 is not established for jurisdictional purposes."). These cases demonstrate that The DCCC acted appropriately in accordance with the requirement of 28 U.S.C. § 1446(b) that actions may be removed only once it has been ascertained that the action "is or has become removable," 28 U.S.C. § 1446(b), not when the action "*may* be removable." *Ford v. Mannesman Dematic Corp.*, No. 00 C 1226, 2000 WL 1469371, at *3 (N.D. Ill. Oct. 2, 2000) (emphasis added).

### 2. Oberweis Dairy Wrongly Argues That This Case Falls Into A Narrow Exception To The General Rule That Allows The Amount In Controversy To Be Established By Assumption Based On A "Reasonable Reading" Of The Complaint

Oberweis Dairy admits that the Complaint does not expressly claim more than $75,000 in damages, but argues that this case falls under an exception that allows the amount in controversy to be established by assumption based on a "reasonable reading" of the Complaint. Motion at pp. 2-3. Plaintiff offers one Northern District of Indiana case, *Fate v. Buckeye State Mut. Ins. Co.*, 174 F. Supp. 2d 876 (N.D. Ind. 2001), in support of its position, but completely ignores the

6

fact that the Northern District of Illinois has limited the "reasonable reading" exception to cases where the plaintiff alleges grievous personal injury, lost income and medical expenses. In fact, the Northern District of Illinois has expressly rejected *Fate's* extension of the exception to cases like this one. Additionally, *Fate* is not binding on this Court and is factually distinguishable from this case, as will be shown below.

### i. Courts in the Northern District of Illinois have recognized an exception to the general rule only for cases alleging grievous personal injury

Several cases in the Northern District of Illinois hold that where a Plaintiff alleges serious personal injury involving grievous physical and emotional harm, medical expenses, lost income, and pain and suffering, that the 30-day period for removal starts upon receipt of the complaint, even though there is no express *ad damnum* of more than $75,000. *See, e.g., McCoy v. General Motors*, 226 F. Supp. 2d 939, 941 (N.D. Ill. 2002); *Morrow v. DaimlerChrysler Corp.*, 451 F. Supp. 2d 965, 967 (N.D. Ill. 2006). These cases reason that, because the physical and emotional injury alleged is so severe, it is therefore obvious from the face of the complaint that the plaintiff's damages exceed the jurisdictional amount. In *McCoy* (the seminal case setting forth the exception), the plaintiffs, two of whom were minors, were injured in a car crash and brought a product liability suit against the vehicle manufacturer. 226 F. Supp. 2d at 940. In their complaint, plaintiffs alleged that they all sustained "lasting and permanent injuries" and other damages including "severe pain, emotional distress, disability, lost value and enjoyment of life, future loss of income, medical expenses, loss of normal life, disfigurement and paralysis," but requested only an unspecified dollar amount in excess of $50,000. *Id.* The defendant in *McCoy* filed for removal after receiving an admission from the plaintiffs that they were seeking damages in excess of $75,000, more than 30 days after being served with the complaint. *Id.* The Court remanded the case back to state court, holding that removal was untimely because the severity of the plaintiffs' injuries made it "obvious from the face of the complaint that the plaintiffs' damages exceeded the jurisdictional amount." *Id.* at 941. However, in doing so, the *McCoy* court emphasized that this exception was limited to this very narrow set of facts, and distinguished its holding from other cases in the Northern District of Illinois that had refused to

7

recognize such an exception for personal injury cases[1], explaining that, in the other cases, "the plaintiffs were not minors, and did not plead the same serious, permanent injuries, paralysis and loss of income as the plaintiffs in this case." *Id.* at 942 n.1.

Similarly, the plaintiff in *Morrow* brought a product liability action in state court against defendant auto manufacturer. 451 F. Supp. 2d at 966. The *Morrow* plaintiff claimed damages "in excess of $50,000" and further alleged that: "[t]he seat breaking caused the Plaintiff to sustain injuries, both internally and externally, of a permanent and lasting nature, the Plaintiff was caused and will in the future be caused to endure pain and suffering in body and mind; further, in an endeavor to cure his said injuries, the Plaintiff was caused to and will in the future be caused to expend money for medical care; furthermore, the Plaintiff was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time." *Id.* at 967. In granting the plaintiff's motion to remand based on untimeliness, the Court applied the *McCoy* exception and found that, due to serious nature of the personal injury damages claimed in the complaint, the complaint put defendants on notice that the action was removable. *Id.*

These cases show that the Northern District of Illinois has created an exception for establishing the amount in controversy by assumption based on a "reasonable reading" of the complaint *only* for cases involving grievous personal injury with extreme physical and emotional trauma and significant and ongoing medical expenses. The facts of this case are not even close to those of *McCoy* and *Morrow*, as the plaintiff here, Oberweis Dairy, is not an individual, but a corporation, and hence is not claiming severe physical and emotional injury and medical expenses, but rather vague damage to its reputation and business. Therefore, this case does not

---

[1] The McCoy exception is disputed, as there is an entire line of cases in the Northern District of Illinois rejecting the approach in *McCoy et al*, and holding that the amount in controversy must be established with certainty, at that time by following the procedures set forth in the now withdrawn Local Rule 81.2 to obtain an explicit statement from the plaintiff as to the amount of damages being sought. *See, e.g., Tokarz v. Texaco Pipeline, Inc.*, 856 F. Supp. 403 (N.D. Ill. 1993) (Shadur, J.); *Turner v. Goodyear Tire & Rubber Co.*, 252 F. Supp. 2d 677 (N.D. Ill. 2003); *Abdishi v. Phillip Morris Inc.*, No. 98 C 1310, 1998 WL 311991 (N.D. Ill. June 4, 1998); *Ford v. Mannesman Dematic Corp.*, No. 00 C 1226, 2000 WL 1469371 (N.D. Ill. Oct. 2, 2000).

8

fall into the Northern District of Illinois' "reasonable reading" exception and The Dairy's vague damages allegations in the Complaint did not start the 30-day clock for removal. The DCCC's Notice of Removal was timely filed and Oberweis Dairy's Motion should be denied.

### ii. Northern District of Illinois courts have expressly refused to extend the "reasonable reading" exception to non-personal injury cases like this one

As fully discussed below in Part A.2.iii., Oberweis Dairy cites to *Fate v. Buckeye State Mut. Ins. Co.* in an attempt to apply the *McCoy* exception outside the realm of serious personal injury cases. However, the Northern District of Illinois has expressly rejected *Fate's* extension of the *McCoy* exception into the "general universe of tort law." *RBC Mortgage Co. v. Couch*, 274 F. Supp. 2d 965, 969. As more fully recounted in Part A. 1., *supra*, the complaint in *RBC Mortgage* alleged unspecified damages "exceeding $50,000" and the defendant waited more than 30 days after being served with the complaint, until it had received an express admission from the plaintiff that more than $75,000 in damages was being sought, before removing. *Id.* at 967-68. Plaintiff argued that the reasoning underlying the *McCoy* exception applied to render Defendant's notice of removal untimely because the complaint contained enough information for Defendant to determine that the amount in controversy exceeded $75,000. *Id.* The Court disagreed, however, distinguishing *McCoy* and related cases, and explaining:

> Generally, where the complaint does not articulate a specific ad damnum, the defendant is not on notice that more than $75,000 is in controversy, and the thirty-day time-clock does not start running until he receives an admission that the plaintiff is indeed seeking more than $75,000. However, in some cases, the defendant is responsible for ascertaining from "a reasonable and commonsense reading" of the complaint whether the action is removable. Yet *McCoy* and related cases dealt solely with personal injury and product liability actions, all of which alleged "serious, permanent injuries and significant medical expenses." In such situations, it is indeed "unambiguous" that a plaintiff will seek more than $75,000. However, because we see no reason to extend *McCoy* past the unique circumstances of personal injury and extraordinary loss into the general universe of tort law, we find as a matter of law that the amount in controversy was not unambiguous from the face of RBC's complaint. Thus, Couch filed his notice of removal in a timely manner.

*Id.* at 969 (internal citations omitted). Based on a thorough search of the case law and in accordance with the Court's decision in *RBC Mortgage Co.*, there do not appear to be any cases in the Northern District of Illinois applying the *McCoy* exception to a non-personal-injury

9

dispute between corporations like this one. Therefore, this Court should reject Oberweis Dairy's attempt to use *Fate* to extend the *McCoy* exception to the case at hand.

### iii. *Fate v. Buckeye State Mutual Ins. Co.* is not controlling here

Oberweis Dairy attempts to rescue itself from controlling Northern District of Illinois case law by citing to the Northern District of Indiana decision *Fate v. Buckeye State Mutual Ins. Co.*, 174 F. Supp. 2d 876 (N.D. Ind. 2001)[2], but, as explained above, *Fate's* reasoning has been

---

[2] In addition to *Fate*, Oberweis Dairy cites to *Doe v. Allied Signal, Inc.*, 985 F.2d 908 (7th Cir. 1993), *Neville v. Value City Dept. Stores, LLC*, No. 07 CV 53, 2008 WL 2796661 (S.D. Ill.) and *Zaragon Holdings, Inc. v. Indian Harbor Ins. Co.*, No. 08 CV 0111, 2008 WL 1883472 (N.D. Ill. Apr. 25, 2008) to support its position that the Complaint placed The DCCC on notice of the amount in controversy, rendering removal untimely. Since Oberweis Dairy failed to include any pinpoint cites to these cases, it is unclear what exactly it being cited to. Nevertheless, these cases do not support the proposition for which they were cited. In *Doe v. Allied Signal, Inc.*, the Seventh Circuit was reviewing the district court's *sua sponte* removal of the action to federal court, and the question presented was whether the protection of a previous federal judgment based entirely on the interpretation of state law created federal subject matter jurisdiction sufficient to support removal of a state court action. 985 F. 2d at 910. Neither timeliness nor the determination of the amount in controversy was addressed at all. *Neville v. Value City Dept. Stores, LLC*, follows the line of cases which allow the amount in controversy to be assumed to exceed $75,000 in serious personal injury actions, but is distinguishable because, in addition to being a personal injury case, plaintiff's motion to remand was not based on timeliness, but rather on her assertion that she in fact was not claiming more than $75,000 in damages. 2008 WL 1883472, at *3. The *Neville* court denied the motion to remand, finding that plaintiff's allegations of grievous personal injury, combined with her settlement demand of $300,000 and refusal to stipulate that her damages were less than $75,000, established that the amount in controversy exceeded $75,000. *Id.* at *3-6. Likewise, the timeliness of removal was not at issue in *Zaragon Holdings, Inc. v. Indian Harbor Ins. Co.* There, the parties did not contest the amount in controversy, but the Court *sua sponte* examined whether the requisite amount in controversy had been established, and found that it had because even though the plaintiff claimed only approximately $60,000 in compensatory damages in its complaint, a document in the record showed that its entire loss was likely $120,000, and its claimed punitive damages were calculable based on an applicable statute at $60,000. 2008 WL 1883472, at *1. Thus in *Zaragon*, the Court relied not only on the allegations in the complaint, but also on "other paper" in order to establish the amount in controversy,

expressly rejected in the Northern District of Illinois. Additionally, *Fate* is not binding on this Court and it is factually distinguishable from this case.

In *Fate*, plaintiff insured sued his insurer for the cost of home repairs ($40,000), plus an unspecified amount of punitive damages and costs. 174 F. Supp. 2d at 877-78. The parties proceeded for eleven months in state court, where the Court denied the defendant's motion to dismiss and its motion to bifurcate the trial, and the parties engaged in discovery. *Id.* at 878. During the course of discovery, eleven months after the case was filed, defendant received an answer to interrogatory wherein the plaintiff admitted he was seeking more than $75,000 in damages, and the defendant filed its notice of removal within 30 days of receiving the plaintiff's answer. *Id.* The defendant claimed that it first ascertained that the amount on controversy was greater than $75,000 when it received the plaintiff's interrogatory response, but the plaintiff argued that the damages allegations in the complaint put the defendant on notice that the amount on controversy was greater than $75,000, and therefore that removal was untimely. *Id.* at 879. The Court agreed with the plaintiff, extending the reasoning of *McCoy* outside the realm of grievous personal injury cases, and holding that the compensatory damages allegation combined with the punitive damages allegation put the defendant on notice that the jurisdictional amount was satisfied and started the 30-day clock. *Id.* at 880. However, the Court also based its decision to remand on a finding that the defendant had waived its right to remove because there had been significant activity on the merits in state court, with the defendant receiving two adverse rulings and litigating for nearly a year prior to removing to federal court. *Id.* The Court cautioned that defendants "unhappy with adverse state court rulings," must not be given a "second bite at the apple" by removing to federal court. *Id.*

*Fate* is not binding on this Court, and even if it were, it is readily distinguishable from this case. In *Fate*, the defendant proceeded on the merits in state court for nearly a year before removing the matter to federal court, receiving adverse decisions on two substantive motions and engaging in full-blown discovery. In contrast, here there were no decisions on the merits rendered by the state court prior to removal, nor was there even any significant activity prior to removal. The record attached to the Notice shows that during the four months the case was in

---

just like The DCCC did in relying on The Dairy's settlement demand letter. Furthermore, plaintiff's punitive damages claim was quantifiable in *Zaragon*, whereas it is not in this case.

the Circuit Court of Kane County, the judge did nothing more than grant two agreed motions to extend The DCCC's time to answer or otherwise plead to the complaint and process The DCCC's motion for substitution of judge. The DCCC did file a motion to dismiss prior to removal, but removal was effected before the motion was decided, and even before a briefing schedule was set for the motion. While the *Fate* court did find, contrary to Northern District of Illinois precedent, that removal was untimely, it is apparent from the opinion that waiver played a large part in the judge's decision to remand the matter, and the facts giving rise to the Court's finding of waiver are not present in this case.

### iv. The Northern District of Illinois has expressly rejected The Dairy's argument that unspecified punitive damages allegations establish the jurisdictional minimum amount in controversy

Oberweis Dairy also argues that its unspecified punitive damages allegation, combined with its compensatory damages alleged to be "in excess of $50,000," should have put The DCCC on notice that it was seeking more than $75,000 in damages. Motion at p. 3. This contention is also unsupported by Northern District of Illinois case law. In *Roscor Corp. v. Itelco USA, Inc.*, 237 F. Supp. 2d 883 (N.D. Ill. 2002) (Shadur, J.), the facts of which are more fully set forth in Part A. 1., *supra*, the Court rejected this very argument. In *Roscor*, the plaintiff alleged compensatory damages "in excess of $50,000" and punitive damages in an unspecified amount. 237 F. Supp. 2d at 883-84. Judge Shadur, *sua sponte*, remanded the case to the Circuit Court of Cook County due to defendant's failure to establish that more than $75,000 was at issue, holding that because the plaintiff is the "master" of his complaint, "the magic over-$75,000 figure" could not be assumed by adding the claim for punitive damages to the unspecified compensatory *ad damnum*. *Id.* at 884.

Similarly, the Court in *Conway v. Medical Staffing Network Inc.*, No. 04 C 1128, 2004 WL 784886 (N.D. Ill. Apr. 12, 2004), granted plaintiff's motion to remand where plaintiff claimed unspecified punitive damages in her complaint, and admitted in an answer to interrogatory that she was seeking $60,000 in damages to her reputation. 2004 WL 784886 at *1, 4. Defendant argued that because a punitive damages award would "certainly be for more than $15,000," that that the jurisdictional minimum of $75,000 had been established. The Court disagreed, stating that there was no evidence before it indicating that plaintiff was entitled to $60,000 in compensatory damages, and thus "any potential damage figure at this stage is mere speculation." *Id.* at *5. The Court explicitly held that "[w]here a generalized amount of lost

wages for an undisclosed time is pleaded, and other damages are vague, the potential for punitive damages to carry the total damages beyond $75,000 is not established for jurisdictional purposes." *Id.* at *6. Therefore, in the Northern District of Illinois, where compensatory and punitive damages allegations are vague and unsubstantiated, it cannot be assumed that the plaintiff is seeking more than $75,000. Accordingly, Oberweis Dairy's unspecified punitive damages allegation did not put The DCCC on notice that the jurisdictional minimum was satisfied and thus The DCCC's Notice of Removal was timely.

### B. THE DCCC'S LIMITED PARTICIPATION IN THE STATE COURT PROCEEDING DID NOT WAIVE ITS RIGHT TO REMOVE NOR IS THERE ANY MERIT TO THE UNSUBSTANTIATED ASSERTION THAT REMOVAL WAS EFFECTED FOR INAPPROPRIATE REASONS

It is unclear whether Oberweis Dairy is also arguing that The DCCC waived its right to remove by participating in state court proceedings, but in an abundance of caution, The DCCC will briefly address waiver. Oberweis Dairy states that The DCCC only removed after it had filed a motion to dismiss and a motion to substitute judge, and that it is using removal "to continue to shop for a judge to hear the case, taking the case to federal court only after finding neither of the previously assigned state court judges to its liking." Motion at pp. 1, 3-4. Oberweis Dairy asserts that, therefore, removal was not "appropriate." *Id.* at p. 4.

First, in the Seventh Circuit, remand on the basis of waiver is limited to "extreme situations," described as "a case in which the suit is fully tried before the statutory period [for removal] elapses and the defendant then files a petition for removal." *Rothner v. City of Chicago*, 879 F.2d 1402, 1416 (7th Cir. 1989). In this case, aside from two agreed motions for an extension of time for The DCCC to answer or otherwise plead to the Complaint, the only activity was The DCCC's motion to dismiss and motion for substitution of judge. The motion for substitution of judge is of right in Illinois, and is a preliminary motion which does not reach the merits of the matter, and the motion to dismiss was not ruled on, nor even fully briefed before the action was removed. *See, e.g., Dorazio M.D. v. UAL Corp.*, No. 02 C 3689, 2002 WL 31236290, at *4 (N.D. Ill. Oct. 2, 2002) (court held defendant did not waive its right to remove suit where defendant filed motion to dismiss in state court prior to removal, but motion was not ruled upon prior to removal). Therefore, The DCCC did not waive its right to remove this action.

Second, even if The DCCC had removed the case to federal court because of the alleged "prospect of a favorable result"—which it did not—that would not bar removal, or even weigh against it. *Rothner*, 879 F.2d at 1408. As the Seventh Circuit explained in *Rothner*: "[t]he defendant's motive for removing is not a proper consideration for remand. Every defendant who removes considers the prospect of a favorable result in the federal forum. Moreover, even if the defendant's motives could be considered, any concerns on the part of [defendant] about whether it would (or did) receive a fair hearing in state court are *exactly* the kinds of concerns the removal statutes were intended to alleviate." *Id.* As The DCCC neither waived its right to remove nor removed for impermissible reasons, Oberweis Dairy's Motion must be denied.

WHEREFORE, Defendant, Democratic Congressional Campaign Committee, Inc., respectfully requests that the Court deny Oberweis Dairy's Motion to Remand, and award The DCCC such further relief as this Court deems just and proper.

Dated: September 18, 2008

Respectfully submitted,

DEMOCRATIC CONGRESSIONAL
CAMPAIGN COMMITTEE, INC.,

By:   /s/ Amanda E. Adrian
      One of Its Attorneys

C. Vincent Maloney
Amanda E. Adrian
**PERKINS COIE LLP**
131 South Dearborn Street
Suite No. 1700
Chicago, Illinois 60603
Tel: (312) 324-8400
Fax: (312) 324-9400
Firm I.D. No. 39225

14

## CERTIFICATE OF SERVICE

I, Amanda Adrian, an attorney, certify that I caused to be served upon the party named below a true and correct copy of **Defendant Democratic Congressional Campaign Committee, Inc.'s Response in Opposition to Plaintiff Oberweis Dairy, Inc.'s Motion to Remand**, via CM/ECF on the 18th day of September, 2008:

Thomas DiCianni
Ancel, Glink, Diamond, Bush,
DiCianni & Krafthefer, P.C.
140 South Dearborn, 6th Floor
Chicago, Illinois 60603
tdicianni@ancelglink.com


_____ /s/ Amanda E. Adrian _____