IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **OBERWEIS DAIRY, INC.,**<br><br>        **Plaintiff,**<br><br>    v.<br><br>**DEMOCRATIC CONGRESSIONAL<br>CAMPAIGN COMMITTEE, INC.,**<br><br>        **Defendant.** | **Case No. 08 C 4345**<br><br>**Hon. Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

Plaintiff Oberweis Dairy ("Plaintiff") filed a one-count complaint against the Democratic Congressional Campaign Committee (hereinafter, the "DCCC," "Committee," or "Defendant") in Kane County Circuit Court. Following receipt of a settlement demand, Defendant DCCC filed a Notice of Removal in this Court, and Plaintiff now seeks to remand the action to the state court. For the reasons stated below, the Motion to Remand is **denied**.

### I. BACKGROUND

Plaintiff Oberweis Dairy filed suit against the Committee in Kane County Circuit Court on March 6, 2008, alleging that ads run by the DCCC have placed it in a false light. According to the Complaint, the Committee has run numerous ads against candidate Jim Oberweis (not a party to this suit), and those ads wrongly state that Plaintiff Oberweis Dairy has hired and retained illegal immigrants as employees. The Complaint alleges that the false

light in which the ads have placed Plaintiff is highly offensive to a reasonable person, and that the ads have damaged Plaintiff's business and business relationships, by "reduc[ing] and diminish[ing]" Plaintiff's reputation with its customers, clients, vendors, and stockholders. Plaintiff's complaint seeks an injunction against further use of the ads, compensatory damages exceeding $50,000, punitive damages, and the costs of this suit.

Defendant DCCC was served with the Summons and Complaint on April 18, 2008. Soon thereafter, counsel for Defendant contacted Plaintiff's counsel and inquired about the amount of damages suffered and whether the parties could settle the case prior to further litigation. After several further calls by Defendant's counsel (and two agreed motions to extend the time for Defendant to answer or otherwise plead in the Circuit Court), the Committee received a written settlement demand from Plaintiff on July 7, 2008. The written demand advised Defendant that, in addition to a public retraction and agreement not to run advertisements adverse to Oberweis Dairy, Plaintiff sought $100,000 to compensate for the damage to the company's business reputation and good will.

Defendant filed its notice of removal in this Court on July 31, 2008. Plaintiff asks that the case be remanded to the state circuit court, arguing that the notice of removal was untimely and that Defendant waived its right to remove.

## II. **ANALYSIS**

Although Plaintiff implies that Defendant waived its right of removal by its actions in the state court, that argument is easily dismissed. Waiver of the right to remove is reserved for "extreme situations," *Rothner v. City of Chicago*, 879 F.2d 1402, 1416 (7th Cir., 1989), and is not implicated in a case such as this, where there have been no rulings on the merits. *See Dorazio v. UAL Corp.*, 2002 WL 31236290, at *4 (N.D.Ill., Oct. 2, 2002) (no waiver where, prior to removal, motion to dismiss was filed in state court but not ruled upon). Nor do we find any merit or substance in either party's muted accusations of "gamesmanship" and forum shopping. The motivations of the parties in seeking their respective forums are irrelevant to this decision. *See Rothner*, 879 F.2d at 1408. The Court need only determine whether removal in this case was proper and timely.

### A.  Whether Removal Was Proper

To be able to remove a case to federal court, the removing party must show that the case is one over which the district courts of the United States have original jurisdiction, *i.e.*, that the case involves either a federal question or that it satisfies the requirements of this Court's diversity jurisdiction. *See* 28 U.S.C. § 1441(a); *Weatherall v. Weatherall*, 83 F.Supp.2d 1003, 1004 (E.D.Wis., 1999). To establish diversity jurisdiction, the parties must be citizens of different states and must show that the amount in controversy exceeds $75,000, exclusive of interest and costs.

*See* 28 U.S.C. § 1332(a). The removing party need not demonstrate that the Plaintiff will actually recover the requisite amount. *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir., 2005). Instead, a party need only show that the *stakes* of the litigation (that is, the amount *claimed* by Plaintiff, or the amount Plaintiff *hopes* to recover) exceeds $75,000. *See id.* at 449; *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir., 2006).

Of course, it is relatively easy to determine the amount Plaintiff claims where the complaint contains a demand for a specific dollar amount, and that number is usually accepted as an adequate indication of the amount in controversy. *See Rising-Moore*, 435 F.3d at 815. However, where the complaint does not contain a specific dollar demand, and where it is the defendant rather than the plaintiff who asserts federal jurisdiction, ascertaining the amount in controversy is considerably harder. Defendant must find some other way to show not just what the stakes of the litigation *could be*, but what they actually *are*. *See Brill*, 427 F.3d at 449. Whatever the method, Defendant must establish that the amount in controversy exceeds $75,000 by a preponderance of the evidence. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 542 (7th Cir., 2006).

Here, there is no dispute that diversity jurisdiction is met. Plaintiff and Defendant are in agreement that they are citizens of

different states, and Plaintiff's settlement demand of $100,000 is sufficient to demonstrate that the stakes of the litigation exceed the required minimum of $75,000. *See Meridian*, 441 F.3d at 541. The central basis on which Plaintiff rests its motion for remand is not the adequate existence of jurisdiction, but the timeliness of Defendant's removal.

### B. Whether Removal Was Timely

Normally, removal must be effected by the Defendant within thirty days after receipt of the initial pleading. *See* 28 U.S.C. § 1446(b). However, if the case stated by the initial pleading is not removable, Defendant may file its notice within thirty days after receipt of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is removable. *Id.* The timeliness of Defendant's removal therefore depends upon a determination of when it could first ascertain that the case was removable. If the case was removable immediately upon receipt of the complaint, as Plaintiff claims it clearly was, Defendant's notice filed on July 31, 2008 comes more than 100 days after its receipt of the complaint - well past its 30 day window. If, however, Defendant could not have ascertained that the case was removable (*i.e.*, that the amount in controversy exceeded $75,000) until it received Plaintiff's settlement demand on July 7, 2008, then the Committee's notice of removal was filed timely, and Plaintiff's motion to remand must be denied.

The parties suggest various approaches and further rules for determining when Defendant first could have ascertained that this case was removable. For example, Plaintiff cites cases which require a party to file its notice of removal immediately upon receipt of the complaint if a "reasonable and commonsense reading of the complaint" makes it "obvious" that plaintiff will seek more than $75,000, or if the allegations are sufficient for defendant to "plausibly argue" that the jurisdictional amount has been met. *McCoy by Webb v. Gen. Motors Corp.*, 226 F.Supp.2d 939, 941 (N.D.Ill., 2002); *Fate v. Buckeye State Mut. Ins. Co.*, 174 F.Supp.2d 876, 880 (N.D.Ind., 2001). Defendant, on the other hand, puts forth cases which suggest that determining the amount in controversy is virtually impossible absent a specific dollar demand from Plaintiff, and that Defendant should be permitted to wait for a more definite statement about the amount Plaintiff seeks. *See, e.g., Schacht v. Ethicon, Inc.*, 881 F.Supp. 348, 349 (N.D.Ill., 1995); *Gaskin v. Sharp Elec. Corp.*, 2005 WL 2736442, at *6 (N.D.Ind., Oct. 24, 2005). A middle ground of cases recognizes the difficulty in determining the amount in controversy absent a specific *ad damnum*, but nevertheless separates out a small sliver of serious personal injury cases as ones in which it is obvious that the amount in controversy exceeds $75,000, and for which Defendant must remove immediately upon receipt of the complaint. *See, e.g., RBC Mortg. Co. v. Couch*, 274 F.Supp.2d 965, 969

(N.D.Ill., 2003); *Roberson v. Orkin Exterminating Co., Inc.*, 770 F.Supp. 1324, 1329 (N.D.Ind., 1991).

Ultimately, the Court finds the bright-line rules for which the parties advocate to be unhelpful. Although broad-based rules hope to provide greater certainty to litigants, the question at hand is so inherently fact-intensive, and the district courts of this Circuit approach the subject from such widely divergent starting points, that implementation of rigid, bright-line rules would only add to the confusion and disagreement in this area of the law. A straight-forward, fact-based approach to the question will allow the flexibility and fairness needed, and will direct the attention of both the Court and the litigants back to the case in question. After all, litigants are required to prove the existence of diversity jurisdiction on the basis of the individual facts of their case, instead of vague pronouncements or unfounded assumptions. An evaluation of *when* Defendant would have been able to present such evidence should be no different.

In the end, the fundamental inquiry remains clear: When could Defendant first ascertain that the action was removable? While Plaintiff's lack of a specific *ad damnum* and the information disclosed by a reasonable reading of the complaint will be relevant to this question, there is no need to transform these facts into a separate inquiry all their own. Instead the Court need only determine at what point Defendant had sufficient information to

prove by a preponderance of the evidence that the stakes of this litigation exceed $75,000.

In this case, the Court believes Defendant could not have ascertained that the case was removable until the Committee received Plaintiff's settlement demand. By law, Plaintiff's complaint was limited to stating that it sought compensatory damages "exceeding $50,000," giving Defendant no notice of the exact amount Plaintiff hoped to recover from this litigation. *See* 735 ILCS 5/2-604. Nor is there anything else on the face of Plaintiff's complaint which makes it obvious that the amount in controversy exceeds $75,000. The complaint provides extremely few details by which Defendant could hope to estimate the level or extent of damages claimed. There are no allegations of business ties actually being severed, customers being lost, revenue being diminished, or any indication of permanent damage. Indeed, the complaint is almost entirely lacking in quantifiers of any kind. Based upon the face of the complaint, what evidence could Defendant possibly have provided to convince a federal district court (by a preponderance of the evidence) that Plaintiff was seeking to recover more than $75,000?

At most, the complaint advised Defendant that the claim was for damages of an ongoing nature (ads "have been, and will continue to be, damaging") to a fair-sized, regional business (the complaint alleges locations throughout four states, but no indication of the

total number of stores or the revenue they produce). While Plaintiff could argue that ongoing damage to the reputation of such a large company will necessarily incur significant economic damage, the amount remains difficult to quantify in any way. Indeed, given the relatively undetailed and benign description of the damage to Plaintiff's reputation, Defendant may have been justified fully in believing that the $50,000 figure already accounted for the (possible) size and profitably of the Plaintiff company.

Perhaps Defendant could have argued that the mere variety and numerosity of penalties sought by Plaintiff was enough to show that the amount in controversy more likely than not exceeds $75,000. According to Plaintiff, once you combine these additional requests with a compensatory claim that seeks more than $50,000, it becomes "clear" that the amount in controversy exceeds the jurisdictional minimum. But this kind of argument by assumption (particularly, assumption about the amount of punitive damages in controversy) has been expressly rejected by other courts in this district. *See Roscor Corp. v. Itelco USA, Inc.*, 237 F.Supp.2d 883, 884 (N.D.Ill., 2002); *Conway v. Medical Staffing Network, Inc.*, 2004 WL 784886, at *5 (N.D.Ill., Apr. 12, 2004). Rather than assume the worst, Defendant made timely inquiries to determine how much Plaintiff hoped to recover, and filed its notice of removal within an appropriate time after it learned that Plaintiff sought more than $75,000. The Court will not punish Defendant for its cautious, yet

diligent, efforts to ascertain the removability of this case. Nor will this Court require (or encourage) Defendant to file an immediate notice of removal, based on nothing more than unfounded assumptions about Plaintiff's supposed desire for outsized damage awards.

Finally, the Court must reject Plaintiff's repeated argument that "it is clear on the face of the complaint that Oberweis alleges a significant economic impact on its business that is likely greater than $75,000." While Plaintiff's briefing now touts the obviously severe and egregious damage done to Plaintiff's reputation, the language of the complaint itself is much more restrained. Neither the word "significant" nor "substantial" appears anywhere in the text of Plaintiff's complaint. The complaint does not label the ads as grossly or severely damaging. It does not claim that Plaintiff's reputation has been seriously or permanently impaired. Instead, Plaintiff's description of its damages simply alleges that the ads have been "damaging" to Plaintiff's business and business relationships, because its reputation has been "reduced and diminished." A more subdued description of Plaintiff's damages could hardly be imagined. While Plaintiff is not to be discouraged from making a restrained and sober assessment of the damages it has suffered, it cannot argue that this language paints the picture of an obviously substantial claim. Conclusory assertions that the jurisdictional minimum has

been clearly met are not sufficient to establish the removability of a case, and they cannot be permitted to secure remand for Plaintiff now.

### III. CONCLUSION

For the reasons stated herein, Defendant's Notice of Removal was filed in a timely and appropriate manner. Plaintiff's Motion to Remand is **denied**.

**IT IS SO ORDERED.**

                                          Harry D. Leinenweber, Judge
                                          United States District Court

**DATE:** October 21, 2008